IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Clinton D. Johnson, Jr.,<br><br>       Plaintiff,<br><br>v.<br><br>Kim Rutz Dubose, Jeremy Chapman, and Oconee County Detention Center,<br><br>       Defendants. | C/A No. 5:23-cv-1970-SAL<br><br><br>**ORDER** |

    This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Kaymani D. West made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) (the "Report"). [ECF No. 68.] The Report recommends the court grant Defendants Kim Rutz Dubose ("Rutz"),[1] Jeremy Chapman, and Oconee County Detention Center's ("OCDC") motion for summary judgment, ECF No. 61. For the reasons below, the court adopts the Report and grants Defendants' motion.

### BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff Clinton D. Johnson, Jr., brings this *pro se* action under 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights while he was incarcerated at OCDC. [ECF Nos. 1, 24.] Johnson alleges OCDC officials served him peanut butter, despite knowing he is allergic and that his religion prohibits him from eating it. [ECF No. 24 at 8.] He claims Rutz, who oversees the OCDC kitchen, was "deliberately indifferent" to his requests to accommodate his religious diet. *Id.* at 5. Johnson also alleges Chapman, a captain at OCDC, "was made personally aware of

---

[1] The court refers to her as Kim Rutz, as Defendants indicate this is her legal name. *See* ECF No. 61-1 at 1, n.1.

1

Plaintiff's religious need," but nevertheless allowed his requests to be deleted from prison kiosks. *Id.*

Johnson further claims OCDC officials placed him in a "lockdown" procedure for over 179 days based on false accusations of misconduct. *Id.* at 5. There, he contends prison officials gave him peanut butter sandwiches for each meal and withheld "access to kiosk[s], phones, [and] visits." *Id.* at 8. Johnson claims Chapman oversaw the staff members who made these accusations. *Id.* at 5. He also names OCDC as an entity, contending it "allowed staff to deliberately and with cruelty, intentionally cause hurt and harm [to] Plaintiff by allergic reactions to peanut butter." *Id.* OCDC allegedly refused to "medically treat any allergic reaction" because Johnson refused to sign a medical release form. *Id.* at 9.

Defendants move for summary judgment on Johnson's claims. [ECF No. 61.] The magistrate judge recommends the court grant that motion, finding that OCDC and Defendants Rutz and Chapman acting in their official capacities are not "persons" amenable to suit under § 1983. [ECF No. 68 at 5–6.] The Report further concludes that Johnson fails to prove a cognizable claim against Rutz and Chapman in their individual capacities. *Id.* at 7–20. Johnson filed objections to the Report, ECF No. 70, and Defendants replied, ECF No. 71. This matter is now fully briefed and ripe for review.

**LEGAL STANDARDS**

**I.**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movants bear the initial burden of proving they are entitled to summary judgment by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the nonmoving party must then show that a material fact is genuinely disputed. In determining whether of a genuine issue of material fact exists, the court must draw all justifiable inferences in favor of the nonmoving party. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.

The magistrate judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then reviews *de novo* only the portions of the Report to which a party has specifically objected. *Id*. An objection is sufficiently specific if it reasonably alerts the court to a party's true objection to the Report. *Id.* at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If instead a litigant objects only generally, the court reviews the Report for clear error and need not provide an explanation for adopting the recommendation. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Because Johnson is proceeding *pro se*, the court must liberally construe his arguments to allow him to fully develop potentially meritorious claims. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). That said, the requirement of liberal construction does not mean the court can assume a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view [ ] *pro se* complaints does not transform the court into an advocate.").

## DISCUSSION

To recover under § 1983, Johnson must prove a violation of a right secured by the Constitution or laws of the United States committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The magistrate judge concludes that Johnson does not make this showing and, thus, that Defendants are entitled to summary judgment. [ECF No. 68.] For the following reasons, the court adopts the Report in full.

### I.

The magistrate judge first finds that OCDC and the Defendants named in their official capacities are not amenable to suit under § 1983. *Id.* at 5–6. The court agrees.

To begin, OCDC—as a detention center—is not a "person" within the meaning of the statute. As the Report notes, prison facilities are not proper defendants under § 1983. *See* ECF No. 68 at 6 (citing *Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. Nov. 19, 2001)); *see also Nelson v. Lexington Cty. Det. Ctr.*, No. 8:10-2988-JMC, 2011 WL 2066551, at * 1 (D.S.C. May 26, 2011) ("Plaintiff has [ ] failed to establish that Defendant Detention Center, as a building and not a person, is amenable to suit under § 1983."). OCDC is thus entitled to summary judgment on Johnson's claims.

Defendants Rutz and Chapman, named in their official capacities as employees of the Oconee County Sheriff's Department, likewise cannot be sued under § 1983. It is "well settled" that county sheriff's offices in South Carolina are considered state agencies for Eleventh Amendment purposes. *Williams v. Pelletier*, No. 2:23-CV-02149-DCN, 2023 WL 8627812, at *3 (D.S.C. Dec. 13, 2023) (citation omitted) (collecting sources); *see also Cromer v. Brown,* 88 F.3d 1315, 1332 (4th Cir. 1996). Under the Eleventh Amendment, *"*an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). This immunity extends to a state's agents and instrumentalities. *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). The Supreme Court has thus held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As "arms of the State," Rutz and Chapman are entitled to summary judgment as to the claims against them in their official capacities.[2] *Will*, 491 U.S. at 70.

## II.

The Report further concludes that Defendants are entitled to summary judgment on claims brought under a respondeat superior theory. *See* ECF No. 68 at 7–8. In his amended complaint, Johnson asserts that Chapman was a "captain over [OCDC] staff" and "in charge" of OCDC "technology and computer coding."[3] [ECF No. 24 at 5.] The court agrees with the magistrate judge that these claims are not actionable.

---

[2] Despite naming Rutz and Chapman in their official capacities, Johnson indicates in both his response to summary judgment and objections that they acted only in their individual capacities. *See* ECF Nos. 65 at 1; 70 at 1. To the extent he still asserts his claims against Defendants in their official capacity, his claims fail for the above reasons.

[3] He similarly suggests that Rutz should be held responsible under a respondeat superior theory, based on the actions of OCDC officers "under her charge." *Id.*

5

To succeed on a § 1983 claim, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). There is accordingly "no respondeat superior liability under § 1983 claim." *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Thus, to the extent Johnson attempts to recover against Defendants for acts committed by individuals under their supervision, those claims fail.

### III.

The Report lastly finds that Johnson does not prove any constitutional violations committed by Rutz and Chapman in their individual capacities. *See* ECF No. 68 at 8–20. The court agrees that Johnson does not show Defendants (1) violated his right to freely exercise his religion by serving him peanut butter, (2) acted with deliberate indifference to a known allergy or other medical needs, or (3) subjected him to disciplinary measures without due process.

### A.

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices." *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). The clause prohibits policies that impose a "substantial burden on a prison's right to practice his religion." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). The Fourth Circuit has thus provided that, under the Free Exercise Clause, a prisoner has a clearly established right to a diet consistent with his religious beliefs. *Id.* (citations omitted). That said, "free exercise restrictions that are 'reasonably adapted to achieving a legitimate penological objective' are permissible." *Id.* at 499 (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006)). In determining whether a restriction is "reasonable," a court must accord "substantial deference to

the professional judgment of correctional officers." *Id.* (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

As a preliminary matter, however, a plaintiff must prove that a prison policy impinges on his free exercise rights. *See Ali v. Dixon*, 912 F.2d 86, 89 (4th Cir. 1990). To make this showing, an inmate must demonstrate that "(1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Carter v. Fleming*, 879 F.3d 132, 139 (4th Cir. 2018). Here, Johnson does not clear this threshold.

To begin, Johnson does not demonstrate a sincere religious belief against eating peanut butter. He claims to practice "the Sciences of Amu Amaru," of which he is the founder and allegedly holds a "Federal Electric Identification Number" as proof of government recognition.[4] *See* ECF No. 67 at 2. Johnson contends that his belief against peanut butter is "supported by biblical texts" and, specifically, "[t]he doctrine the body is [God's] temple." ECF No. 24 at 9; *see also* ECF No. 70 at 2.

Johnson, however, does not explain the basic tenants of his religion any further. *See* ECF No. 68 at 12. Moreover, he does not consistently describe the dietary requirements of his religion. In his amended complaint, Johnson states that the food violates his religion because it contains "rape seed oil" as "an active ingredient." [ECF No. 24 at 8.] But Rutz attests by sworn affidavit that Johnson told her his religion prohibits eating food "cooked in oils" generally. [ECF No. 61-2 at 3.] And in his objections, Johnson now adds that "it is essential for Plaintiff not to eat foods fried." [ECF No. 70 at 2.] He also contends that "a purification is necessary" when his body is "introduced to unclear matter," but claims that OCDC has "no viable hygiene for these purposes." *Id.* "Even more problematic[ally]," as the Report notes, Johnson "vacillates between alleging he

---

[4] Johnson objects to the Report referring to his claimed religion as "the Science of Amu Amuru." [ECF No. 70 at 1.] This alleged misspelling is immaterial to the magistrate judge's substantive findings.

7

has religious beliefs that encompass a restriction on peanut butter and his contention that he has an allergy to peanut butter." ECF No. 68 at 13; *see also* ECF No. 65 at 2. In short, he does not prove he holds a sincere religious belief concerning his diet.

Even assuming he could make that showing, Johnson also fails to prove that Defendants placed a substantial burden on his ability to practice his religion. [ECF No. 68 at 13.] In her affidavit, Rutz states that Johnson "made numerous complaints about his diet." [ECF No. 61-2 at 1.] In response, she "spent a significant amount of time attempting to find information concerning [his] religion." *Id.* at 3; *see also Cutter v. Wilkinson,* 544 U.S. 709, 725 n.13 (2005) ("[P]rison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic."). Rutz provides that she was only able to find one website on the Sciences of Amu Amaru, and it did not contain any description as to beliefs or food preferences. *Id.* She thus asked Johnson for more information on his religion, and he directed her to the chaplain at the Horry County Detention Center, where he previously resided. *Id.* According to Rutz, the chaplain stated he "did not have any real information" about the religion and that "it was not recognized by the South Carolina Department of Corrections or to his knowledge any other entity." *Id.*

Despite these unsuccessful efforts, Rutz testifies she granted Johnson's request to go on a vegetarian diet—one of six menus offered at OCDC. *Id.* She also confirmed with OCDC's food services provider that the meals given to inmates were not cooked in oil. *Id.* Moreover, Rutz directed kitchen staff to provide Johnson with eggs instead of peanut butter.[5] *Id.* at 4. And though Johnson occasionally complained that he continued to receive peanut butter, Rutz attests she spoke

---

[5] In response, Johnson notably complained that the food was too heavily seasoned. *Id.*

8

with kitchen staff "each time" to confirm they were providing him an alternative protein option.[6] *Id.*

In their affidavits, Rutz and Chapman acknowledge that inmates placed on disciplinary measures receive "bag meals," which include two sandwiches at each meal—sometimes containing peanut butter. *See* ECF Nos. 61-2 at 2; 61-3 at 2. Chapman states that Johnson would have been placed on a bag lunch diet, based on an incident during which Johnson threw bodily fluids at an officer. *See* ECF Nos. 61-3 at 1–2; *see also* ECF No 24 at 6. In his objections, Johnson maintains—as he has throughout the proceedings—that he was improperly "put on a meal program" because of this incident. ECF No. 70 at 1; *see also* ECF Nos. 24 at 8; 67 at 1. However, he does not provide any factual support that his bagged meals contained peanut butter. Nor does he deny that Rutz engaged in efforts to prevent him from receiving that food. He instead vaguely states that Defendants' affidavits contain "partially true [but] mostly false statements" that were "submitted in bad faith with the intent to mislead the court." [ECF No. 65 at 2.] Thus, the Report correctly finds that, "[a]t best, the evidence . . . suggests that [Johnson] may have been served peanut butter by members of the kitchen staff in error." [ECF No. 68 at 13.]

Johnson accordingly fails to rebut Defendants' showing that they did not substantially interfere with a sincerely held religious belief. Defendants are therefore entitled to summary judgment on his First Amendment claim.

**B.**

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. "[I]t is well established that 'the conditions under which [a prisoner] is confined are subject to scrutiny under the Eighth Amendment.'" *Cartagena v. Lovell*, 103 F.4th

---

[6] Chapman, for his part, attests he was not directly involved with food services and that these matters were handled by other staff members. *See* ECF No. 61-3 at 2.

171, 181 (4th Cir. 2024) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  Additionally, the government is obligated to provide medical care to incarcerated individuals.  *See Estelle v. Gamble,* 429 U.S. 97, 103 (1976).

To prove an Eighth Amendment violation, a plaintiff must show (1) a deprivation that is "objectively, sufficiently serious," denying "the minimal civilized measure of life's necessities," and (2) that prison officials had a "sufficiently culpable state of mind." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Where an inmate challenges prison conditions, "that state of mind must be at least 'deliberate indifference' to the inmate's 'health or safety.'" *Id.* (citations omitted).  To show deliberate indifference, a prisoner must demonstrate that the official "consciously disregard[ed] a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 839).

In his amended complaint, Johnson alleges that—in addition to his religious objection—he is allergic to peanut butter.  *See* ECF No. 24 at 5, 8–9.  He contends Defendants nevertheless acted with deliberate indifference to his dietary requests and served him peanut butter.  *Id.* at 5.  As a result, Johnson claims he "suffered hives, relentless breakout of irritating skin . . . and anaphylactic shock."  [ECF No. 65 at 2; *see also* ECF No. 70 at 1.]  He thus suggests that OCDC officials exposed him to an objectively serious harm.

Defendants, however, correctly note that no evidence exists that Johnson is allergic to peanut butter.  *See* ECF No. 68 at 16.  To this end, OCDC Lieutenant Shadae Cobb testifies by sworn affidavit that OCDC "had no information that Plaintiff was allergic to peanut butter."  [ECF No. 61-4 at 1.]  She also states that Johnson ate peanut butter on "numerous occasions without suffering any detrimental effects," despite claiming to be allergic.  *Id.*  Chapman notably attests to the same.  *See* ECF No. 61-3 at 1.  Defendants also offer proof that Johnson refused OCDC's

10

efforts to treat his alleged peanut butter allergy. Lieutenant Cobb testifies she told him he needed to sign a consent form to be seen by medical personnel if he had an issue with his alleged condition.[7] *See* ECF No. 61-4 at 1. Johnson, however, refused to sign the required consent form multiple times. *Id.* According to Lieutenant Cobb, Johnson did sign one consent form, but he included "so many qualifications and exceptions that it could not be accepted." *Id.*

Johnson responds with no proof that he is allergic to peanut butter or that Defendants exposed him to an objectively serious harm. In his objections, he contends only that Defendants' culpable state of mind can be "derived" from the fact they gave him peanut butter when meat or cheese "could have been given just as easily." [ECF No. 70 at 2.] But, as discussed above, Johnson does not refute Rutz's testimony that she worked with kitchen staff to provide him an alternative diet. *See also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (rejecting a claim that the Constitution requires a "particular grievance procedure"). Having shown neither an objectively serious harm nor a culpable state of mind, Johnson's allergy claims fail.[8]

Johnson's amended complaint further alleges that "physical assaults" occurred on January 4, 2021. [ECF No. 24 at 5.] He claims to have suffered a fractured neck and vertebrae, misalignment of his back, a sprained ankle and knee, and a dislocated shoulder. *Id.* at 9. And

---

[7] Johnson objects to OCDC's requirement that he sign a consent form to receive medical attention. *See* ECF No. 70 at 2. He does not, however, provide an alternative means of verifying his allergy or otherwise point to concrete proof that he cannot eat peanut butter.

[8] For the first time in his response to summary judgment, Johnson claims OCDC deprived him of recreation, soap, tissue, clean linen, and cleaning supplies while he was in lockdown procedure. *See* ECF No. 65 at 1. To the extent he attempts to challenge his conditions of confinement with these allegations, those claims are not properly before the court. *See White v. Roche Biomedical Labs, Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) ("[A] party is generally not permitted to raise a new claim in response to a motion for summary judgment."). Johnson objects that he "mentioned being locked away in a cell" earlier in the proceedings. [ECF No. 70 at 2.] Those claims, however, do not contain allegations suggesting an objectively serious harm. As the Report notes, Johnson does allege in his amended complaint that Matthew Gunner Hewell placed "stool, boogers, fingernail shavings, etc. in [his] food trays." [ECF No. 24 at 8.] But the individual responsible for these conditions of confinement is not named in this suit. Thus, Johnson's claims concerning his lockdown status, which sound more in due process, are addressed in the following section.

though he does not directly relate those injuries to the incident, Johnson suggests Defendants were indifferent to his medical needs. *Id.* But, as the Report notes, Johnson provides no factual support that he suffered the alleged injuries. *See* ECF No. 68 at 17. Nor does he show that any of the named Defendants were personally responsible for the assaults or for his lack of medical attention. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"). Defendants are thus entitled to summary judgment on Johnson's Eighth Amendment claims.

## C.

The Due Process Clause of the Fourteenth Amendment prevents the state from depriving individuals of life, liberty, or property without due process of law. U.S. Const. amend. XIV. "The Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions, entitling him to procedural Due Process protections." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) (citations omitted). To state a procedural due process violation, a plaintiff must "(1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Id.* But, "if no state statute, regulation, or policy creates such a liberty interest, a prisoner cannot 'invoke the procedural protections of the Due Process Clause.'" *Id.* (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)).

Johnson alleges OCDC staff members subjected him to disciplinary measures and placed him on "numerous lockdowns" over 179 days. [ECF No. 24 at 5.] He claims OCDC officials implemented these measures based on "false charges" that he threw bodily fluids on an officer. *Id.* at 5, 8. According to Johnson, OCDC did not provide him notice of the charges against him,

12

present "camera footage" to prove the misconduct, or provide him a disciplinary hearing. [ECF No. 67 at 1.]

To rebut these claims, Defendants offer Chapman's affidavit testimony concerning the alleged incident. Chapman indicates that Johnson was placed in an isolated cell upon arrival because he "was acting aggressively." [ECF No. 61-3 at 1.] While in "administrative segregation," Chapman testifies that Johnson threw bodily fluids on an officer. *Id.* Chapman further explains that, according to OCDC policy, inmates that have disciplinary issues in administrative segregation do not receive an administrative hearing. *Id.* According to Chapman, Johnson ultimately did not receive a disciplinary charge for his conduct and all criminal charges were dismissed. *Id.* at 1–2.

As with his other claims, Johnson does not respond with any evidence to create a genuine issue of material fact. He notably attached a Jail Incident Report to his amended complaint, indicating OCDC officers disciplined him for "throwing feces out his flap." [ECF No. 24 at 6.] But the document does not tie one of the named Defendants to the incident or the ensuing disciplinary measures.[9] Johnson also claims in his sur-reply that OCDC policy requires a hearing before "locking inmates down for a period of sixty days." [ECF No. 67 at 1.] However, he provides no proof of that policy. Thus, no evidence shows either that Defendants were involved in the facts underlying Johnson's procedural due process claim or that OCDC had a policy guaranteeing him a hearing. Summary judgment for Defendants is warranted on this claim.

---

[9] The incident report instead lists an unnamed Officer Hewell, who Johnson alleges was responsible for bringing the false charges against him. *See* ECF Nos. 24 at 6, 8. Johnson does vaguely allege Chapman "allowed false charges and statements, without due process of law and Sixth Amendment guarantee of right to be informed of charges in numerous lockdowns." *Id.* at 5. To the extent Johnson attempts to state a claim under a respondeat superior theory, those claims are rejected for the aforementioned reasons.

13

## CONCLUSION

For these reasons, the court adopts the Report, ECF No. 68, and incorporates it herein.[10] Defendants' motion for summary judgment, ECF No. 61, is accordingly **GRANTED**.

**IT IS SO ORDERED.**

August 5, 2024  
Columbia, South Carolina

Sherri A. Lydon  
United States District Judge

---

[10] Having found no cognizable constitutional violations, the court does not reach the Report's findings as to Defendants' qualified immunity. *See* ECF No. 68 at 20–21.